399 So.2d 981 (1981)
CITY OF LAKE WALES, Florida, Appellant,
v.
LAMAR ADVERTISING ASSOCIATION OF LAKELAND, Florida, a Partnership D/B/a Lamar Citrus Outdoor, Appellee.
No. 80-582.
District Court of Appeal of Florida, Second District.
April 8, 1981.
As Corrected on Denial of Rehearing May 11, 1981.
Robin Gibson of Gibson & Connor, Lake Wales, for appellant.
Michael D. Martin of Martin & Martin, Lakeland, for appellee.
SCHEB, Chief Judge.
Lamar Advertising Association of Lakeland, Florida, rents outdoor advertising space to businesses for display of 300-square-foot poster panels, commonly called billboards. These signs are located away from the sites of the businesses selling the products they advertise. To preserve the beauty of its city, the City Commission of Lake Wales enacted ordinances effectively prohibiting billboards. The trial court held *982 the ordinances unconstitutional. In this appeal we address problems associated with municipal regulation of billboards on the sole basis of aesthetics.
Lamar leased a site in a commercially zoned area in Lake Wales to install a billboard. The City denied Lamar's application for a permit on the basis that its ordinances limited the size of all off-site signs to 200 square feet. Subsequently, the City enacted ordinance 78-5 which prohibited all off-site signs. Again Lamar applied for a permit, and the City denied the application citing ordinance 78-5.
Lamar filed suit against the City. It contended that the City's prohibition of billboards was unconstitutional in that it deprived Lamar of due process of law, equal protection, and freedom of speech and amounted to a taking of its property without just compensation. The City defended ordinance 78-5 on the ground that it was a unique city in Florida by history and planning and that it, therefore, could prohibit billboards to preserve its aesthetic character.
Following trial, the court entered an amended final judgment on April 9, 1979, holding ordinance 78-5 unconstitutional to the extent it prohibited billboards. The court ordered the City to promptly consider amending its ordinance in a manner consistent with the amended final judgment. The City then enacted ordinance 79-21, effective January 2, 1980, amending chapter 3, Signs, of the City's Code of Ordinances which had the objective of promoting "convenience, safety, property values and aesthetics... ."[1] Ordinance 79-21 reinstated the former 200-square-foot size limitation on billboards. Additionally, it limited billboards to unimproved property in commercial and industrial areas and to a height from the ground to the top of each sign of not more than twenty feet and a length of not more than twenty feet. It provided that billboards must be spaced 1,000 feet apart in commercial areas and 600 feet apart in industrial areas.[2] Finally, existing provisions of the City's sign ordinance permitted on-site wall signs to *983 occupy thirty to forty percent of a "signable" area on each wall of a building, while it made the size of on-site ground signs dependent on the number of driving lanes and speed limits on adjacent streets.[3]
The parties then submitted newly enacted ordinance 79-21 to the court by stipulation. At trial the City also attempted to defend this ordinance on the basis of the City's aesthetic character. On March 20, 1980, the court entered another final judgment holding that the ordinance was unreasonable and discriminatory and, consequently, unconstitutional. The court ruled that the 200-square-foot limitation was unconstitutional because it effectively prohibited Lamar's signs "unless [Lamar was] able to find a method of altering [its] national copy which is standardized throughout the United States... ." Lamar's billboard material came from a national supplier which furnished 300-square-foot posters. This standardized size enabled Lamar to participate in advertising campaigns of national and regional businesses as well as making possible the preparation of posters in large quantities at reduced costs. See Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960).
The court thus found that the size restriction, together with the other restrictions, rendered ordinance 79-21 unconstitutional when judged by the standard of aesthetics under the Sunad cases.[4] Accordingly, the court found the provision limiting billboards to unimproved property unconstitutional noting that "parts of improved property *984 may provide as good or better location for off-site advertising than an unimproved lot or parcel... ." With regard to the size and length limitations, the court also concluded that "size or length alone is not determinative of and does not create in and of itself an aesthetic pattern... ." The trial judge could not comprehend why Lamar's twelve by twenty-five foot signs would be less aesthetic than a sign twenty feet high and ten feet wide or twenty feet wide and ten feet high.
Further, the court found the ordinance's spacing restrictions in commercial and industrial areas unreasonable on the ground that they effectively crippled the business of any off-site advertiser. Finally, it concluded that the Highway Beautification Program of the Florida Department of Transportation, Florida Administrative Code Chapter 14-10, preempted municipal regulation of billboards along federal-aid primary highways.[5]
The City filed this appeal from the March 20, 1980, judgment. It challenges only two aspects of the judgment: (1) the court's ruling that the 200-square-foot size restriction on billboards was unconstitutional in that it effectively prohibited Lamar's billboards and (2) its ruling that the Highway Beautification Program of the Florida Department of Transportation preempted any conflicting municipal regulation of billboards on federal-aid primary highways.
We can only surmise that in not challenging the court's rulings on the shape, spacing and location provisions of ordinance 79-21, the City may have concluded that it would have been futile to have amended these provisions to comply with the trial court's judgment as long as the rulings on size restriction and preemption stood. The trial court, of course, had no choice on the size restriction being bound by direct precedent in Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960). In Sunad the supreme court held that a municipality cannot cripple the business of an advertiser or discriminate as to size between on-site signs and billboards on the basis of aesthetics. On the other hand, for the City to have permitted the erection of billboards up to 300 square feet in size to enable Lamar to erect its standardized signs and to comply with Sunad would have emasculated the ordinance and nullified its regulation of billboards. Consequently, the City apparently found no reason to amend the shape, spacing and location restrictions on billboards.
While the City does not challenge the rulings on these restrictions, we agree with the trial court on them. The court was judging the merits of the provisions on the basis of aesthetics, and like the trial court, we do not think they are sustainable under Sunad.[6]
*985 We now address the two principal issues in this case: (1) whether the City's ordinance which effectively prohibits billboards while permitting on-site signs is discriminatory and (2) whether the Florida Department of Transportation's Highway Beautification Program preempts the City's regulation of billboards along federal-aid primary highways within its boundaries.
We conclude that the trial court properly found ordinance 79-21, which the City had defended on the basis of its unique aesthetic character, unconstitutional because under Sunad there is no valid aesthetic reason for distinguishing between billboards and on-site advertising signs. However, we hold that ordinance 79-21 does not conflict with the Highway Beautification Program of the Florida Department of Transportation. We suggest the supreme court might now wish to reconsider its decision in Sunad, Inc. v. City of Sarasota that an ordinance regulating billboards solely on the ground of aesthetics is unconstitutional. See Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).

I. Discrimination between on-site signs and billboards on the basis of aesthetics.

Historically, courts have had difficulty sustaining municipal zoning actions grounded on aesthetics under the police power. Wulfsohn v. Burden, 241 N.Y. 288, 150 N.E. 120 (1925); City of Youngstown v. Kahn Bros. Bldg. Co., 112 Ohio St. 654, 148 N.E. 842 (1925); 1 R. Anderson, American Law of Zoning §§ 7.13, .17 (2d ed. 1976). In fact, initially, "[a]esthetic considerations were held insufficient to support use of the police power to impose even modest limitations upon the location of [billboards]." Id. § 7.16. E.g., Commonwealth v. Boston Advertising Co., 188 Mass. 348, 74 N.E. 601 (1905); Kansas City Gunning Advertising Co. v. Kansas City, 240 Mo. 659, 144 S.W. 1099 (1912); Bryan v. City of Chester, 212 Pa. 259, 61 A. 894 (1905).
Along with other states, however, Florida began to permit its municipalities to consider the beauty of their communities in exercising their police powers. Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960); City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941). Numerous other state courts have since taken the view Justice Douglas stated in Berman v. Parker, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954) (citations omitted):
The concept of the public welfare is broad and inconclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.
E.g., Veterans of Foreign Wars v. Steamboat Springs, 195 Colo. 44, 575 P.2d 835, appeal dismissed, 439 U.S. 809, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978); Newman Signs, Inc. v. Hjelle, 268 N.W.2d 741 (N.D. 1978), appeal dismissed, 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979); Ghaster Properties, Inc. v. Preston, 176 Ohio St. 425, 200 N.E.2d 328 (1964); Lubbock Poster Co. v. Lubbock, 569 S.W.2d 935 (Tex. Ct. App. 1978), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); Markham Advertising Co. v. State, 73 Wash.2d 405, 439 P.2d 248 (1968), appeal dismissed, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969).
In Florida, however, the supreme court refused to expand the doctrine and to permit municipalities to regulate billboards separately from on-site advertising signs solely on the basis of aesthetics. In City of Sarasota v. Sunad, Inc., 114 So.2d 377 (Fla. 2d DCA 1959), this court upheld a Sarasota ordinance, grounded in preserving the unique aesthetic character of that city, which restricted billboards to 180 square feet but did not limit the size of on-site advertising signs. In reversing, the supreme court affirmed the principle that aesthetic *986 considerations are a valid reason for regulating signs. Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960). It held, however, that billboards and on-site signs cannot be separately classified for regulation solely on the basis of aesthetics and held Sarasota's ordinance unconstitutional. Id. at 614-15. See City of Sarasota v. Sunad, Inc., 181 So.2d 11 (Fla. 2d DCA 1965).
Once aesthetics came to be regarded as a valid basis for a municipality's exercise of its police power, other state courts nevertheless began to take the view that municipalities could separately classify and regulate billboards and on-site signs. In United Advertising Corp. v. Borough of Metuchen, 42 N.J. 1, 198 A.2d 447 (1964), the Supreme Court of New Jersey held valid a zoning ordinance prohibiting billboards on the basis of aesthetics when bearing on land utilization. The court also noted, however, that:
[T]he on-premise sign is a mere adjunct to a permitted business or industrial use, whereas the off-premise sign would be a separate, independent business effort. Hence it proves nothing to say that a sign is a sign.
There are obvious differences between an on-premise sign and an off-premise sign. Even if the baleful effect of both be in fact the same, still in one case the sign may be found tolerable because of its contribution to the business or enterprise on the premises. The hurt is thus supported by a need or gain not present in the case of the off-premise sign. This difference, it seems to us, suffices to support the classification.
Id. 198 A.2d at 450. The New Jersey court thus recognized the convenience objective found in the City of Lake Wales' ordinance. See also E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141, 1154 (5th Cir.), cert. dismissed, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970).
In Ghaster Properties, Inc. v. Preston, 176 Ohio St. 425, 200 N.E.2d 328 (1964), the Ohio Supreme Court held valid a statute prohibiting advertising devices erected or maintained within 660 feet of the right-of-way of an interstate highway. The ordinance, however, exempted on-site signs and signs located in commercial and industrial zones within cities where the property adjacent to the interstate highway was subject to municipal regulation or control. The court found that the ordinance was a valid exercise of the police power to enhance the public welfare, apart from considerations of public health, welfare and morals. It also found weakness in Ghaster's assumption that statutes regulating or prohibiting billboards could not be sustained unless they bore "a real and substantial relationship to the public safety." Id. 200 N.E.2d at 336. Finally, the court concluded that the aesthetic impact of billboards is an economic fact which may bear heavily upon the enjoyment and value of property and is a relevant zoning consideration.
In Metromedia, Inc. v. City of San Diego, 26 Cal.3d 848, 610 P.2d 407, 164 Cal. Rptr. 510, probable jurisdiction noted, ___ U.S. ___, 101 S.Ct. 265, 66 L.Ed.2d 127 (1980), the Supreme Court of California upheld a San Diego ordinance banning billboards. It found the ordinance was a valid exercise of the city's police power because it bore a reasonable relationship to the objectives of the ordinance which included elimination of traffic hazards and improvement of the city's appearance. The court reasoned:
We believe, however, that the holding of Varney & Green v. Williams, [155 Cal. 318, 100 P. 867 (1909)], that aesthetic purposes alone cannot justify assertion of the police power to ban billboards, is unworkable, discordant with modern thought as to the scope of the police power, and therefore compels forthright repudiation.
Because this state relies on its scenery to attract tourists and commerce, aesthetic considerations assume economic value. Consequently any distinction between aesthetic and economic grounds as a justification for billboard regulation must fail. "Today, economic and aesthetic considerations together constitute the nearly inseparable warp and woof of the fabric upon which the modern city must design its future."
*987 610 P.2d at 413, 164 Cal. Rptr. 510.[7]See also Metromedia, Inc. v. City of Pasadena, 216 Cal. App.2d 270, 30 Cal. Rptr. 731 (1963), appeal dismissed, 376 U.S. 186, 84 S.Ct. 636, 11 L.Ed.2d 602 (1964); Donnelly Advertising Corp. of Maryland v. Mayor and City Council, 279 Md. 660, 370 A.2d 1127 (1977); Mississippi State Highway Commission v. Roberts Enterprises, Inc., 304 So.2d 637 (Miss. 1974). But see People v. Webb, 189 Colo. 400, 542 P.2d 77 (1975); Metromedia, Inc. v. City of Des Plaines, 26 Ill. App.3d 942, 326 N.E.2d 59 (1975).
In fact, the trend toward acceptance of regulatory distinction between billboards and on-site advertising signs prompted Yokley to write, "It has long been settled that the unique nature of outdoor advertising and the nuisance fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justifies the separate classification of such structures for the purposes of governmental regulation and restriction." 6 E. Yokley, Zoning Law and Practice § 35-9 (4th ed. 1980).[8]
Accordingly, we certify the following question to the supreme court:
CAN A MUNICIPALITY SEPARATELY CLASSIFY OFF-SITE ADVERTISING SIGNS AND ON-SITE SIGNS SOLELY ON THE BASIS OF AESTHETICS, THEREBY RESTRICTING THE SIZE OF OFF-SITE SIGNS?

II. Preemption

The court also found ordinance 79-21 unreasonable in that it conflicted with the Highway Beautification Program of the Florida Department of Transportation, Florida Administrative Code Chapter 14-10. The court concluded, consequently, that the Highway Beautification Program preempted the City's regulation of billboards along federal-aid primary highways within its boundaries. Federal-aid primary highways are highways built in part with federal funds. 23 U.S.C. § 103 (Supp. 1979). The court found, and Lamar and the City agree, that the only two highways along which the City wishes to regulate billboards, State Road 60 and Federal Highway 27, are federal-aid primary highways.
Florida enacted chapter 479, Florida Statutes (1979), implementing the federal Highway Beautification Act of 1965, 23 U.S.C. § 131 (Supp. 1979), and making the Florida Department of Transportation responsible for administering and enforcing the Act. § 479.02, Fla. Stat. (1979). The Department enacted chapter 14-10 of the Administrative Code, the Highway Beautification Program, implementing chapter 479, Florida *988 Statutes. Since the restrictions imposed on billboards in chapter 14-10 of the Administrative Code mirror those in chapter 479, Florida Statutes, we will address the restrictions as set out by the legislature.
Chapter 479 imposes the following restrictions, among others, on billboards:
479.11 Certain outdoor advertising prohibited.  No advertisement, advertising sign or advertising structure shall be constructed, erected, used, operated or maintained:
(1) Within 660 feet of the nearest edge of the right-of-way of all portions of the interstate system or the federal-aid primary system except as provided in s. 479.111, or within 15 feet of the outside boundary of any other federal or state highway or within 100 feet of any church, school, cemetery, public park, public reservation, public playground, state or national forest, or railroad intersection outside the limits of any incorporated city or town.
(2) Beyond 660 feet of the nearest edge of the right-of-way of all portions of the interstate system or the federal-aid primary systems outside of urban areas that is erected with the purpose of its message being read from the main-traveled ways of such system... .
Counties and municipalities in Florida may "establish outdoor advertising or sign ordinances." See §§ 125.0102, 166.0425, 479.155, Fla. Stat. (1979). "[H]owever, such ordinances shall not conflict with any applicable state or federal laws." §§ 125.0102, 166.0425, id. The City's ordinance 79-21, however, imposed more stringent restrictions on billboards located within its corporate boundaries than does chapter 479.[9] Consequently, the trial court concluded, and Lamar argues, chapter 479 preempted ordinance 79-21. We disagree.
We find no conflict between ordinance 79-21 and chapter 479. The Fifth Circuit Court of Appeals addressed this very issue in E.B. Elliott Advertising Co. v. Dade County, 425 F.2d 1141, cert. dismissed, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970), and concluded that the legislature intended to permit municipalities to impose more stringent restrictions on billboards than chapter 479:
This contention, however, is without merit. The word "inconsistent", as used in § 6(f) of Article VIII means contradictory in the sense of legislative provisions which cannot co-exist and the same should be true of the word "conflict" in § 11(5). And it cannot be said that § 479.11(1), Florida Statutes, F.S.A., and Dade County Ordinance No. 63-26 are contradictory in the sense that they cannot coexist. Section 479.15, supra, clearly indicates that Chapter 479 was designed to establish minimum regulations for the outdoor advertising business and does not prevent, but rather leaves the way open and encourages stricter regulations by other governmental agencies in the lawful exercise of their power.
Id. at 1150 (citations omitted).
Section 479.15(1), Florida Statutes (1979), provides:
No zoning board or commission nor any other public officer or agency shall permit any advertisement or advertising structure which is prohibited under the provisions of this chapter nor shall the department permit any advertisement or advertising structure which is prohibited by any other public board, officer or agency in the lawful exercise of its or their powers.

(Emphasis added.) The legislature clearly intended to permit restrictions on billboards more stringent than those in section 479.11.
The trial court also concluded from its review of chapter 479, Florida Statutes, that the legislature intended that outdoor advertising exist in some form in this state and that, therefore, the City could not prohibit billboards. There is nothing in chapter 479, however, which explicitly states or even implies that the legislature intended to prevent counties and municipalities from regulating billboards within their boundaries. *989 In fact, section 479.15(1) indicates the opposite.
We also agree with the California Supreme Court that the preemption issue involving a state's implementation of the federal Highway Beautification Act could arise only where state or local action endangers federal funding under the Act and that that could occur only where a state or local government does not justly compensate owners of existing billboards for their removal. Metromedia, Inc. v. City of San Diego, 26 Cal.3d 848, 610 P.2d 407, 164 Cal. Rptr. 510, probable jurisdiction noted, ___ U.S. ___, 101 S.Ct. 265, 66 L.Ed.2d 127 (1980). See also State v. National Advertising Co., 387 A.2d 745 (Me. 1978).
Initially, we note that the United States Congress in 23 U.S.C. section 131(k) (Supp. 1979) provided, "Nothing in [the Act] shall prohibit a State from establishing standards imposing stricter limitations with respect to signs, displays, and devices on the Federal-aid highway systems than those established under this [Act]." Thus, the Congress did not generally intend to preempt stricter billboard regulation by states. Section 131(g), however, provides that "[j]ust compensation shall be paid upon the removal of ... those [billboards] lawfully in existence on [October 22, 1965]." Finally, subsection (b) provides that a state's share of federal highway funds will be reduced by ten percent if the state does not provide for effective control of billboards "along the Interstate System and the primary system" in accordance with the Act. Consequently, we conclude that if there is any danger of a reduction of federal highway funds under a more stringent state or local regulation, it would occur only where just compensation is not paid for removal of billboards existing on October 22, 1965.
Such cannot be the case here, however, since the legislature provided in section 479.15(2), Florida Statutes (1979), that no municipality can remove a billboard lawfully in existence on December 8, 1971, without paying compensation. Section 479.24(2) provides for payment of compensation pursuant to Florida's eminent domain procedures which would result in just compensation. Consequently, there is no danger of a funding loss under the City's ordinance 79-21. We also note that at the time of the trial on the constitutionality of ordinance 78-5, there were no billboards in Lake Wales, and the issue could not have arisen.
Further, other courts have uniformly held that state laws implementing the federal Highway Beautification Act do not preempt local zoning ordinances banning billboards on federal-aid highways. Art Neon Co. v. City and County of Denver, 488 F.2d 118 (10th Cir.1973), cert. denied, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); Desert Outdoor Advertising, Inc. v. County of San Bernardino, 255 Cal. App.2d 765, 63 Cal. Rptr. 543 (1967), appeal dismissed, 393 U.S. 8, 89 S.Ct. 45, 21 L.Ed.2d 10 (1968), disapproved, Metromedia, Inc. v. City of San Diego, 26 Cal.3d 848, 610 P.2d 407, 164 Cal. Rptr. 510, probable jurisdiction noted, ___ U.S. ___, 101 S.Ct. 265, 66 L.Ed.2d 127 (1980); City of Doraville v. Turner Communications Corp., 236 Ga. 385, 223 S.E.2d 798 (1976); Donnelly Advertising Corp. v. Mayor and City Council, 279 Md. 660, 370 A.2d 1127 (1977); Modjeska Sign Studios, Inc. v. Berle, 43 N.Y.2d 468, 373 N.E.2d 255, 402 N.Y.S.2d 359 (1977), appeal dismissed, 439 U.S. 809, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978); Ackerley Communications, Inc. v. City of Seattle, 92 Wash.2d 905, 602 P.2d 1177 (1979).
Accordingly, we reject the trial court's determination that the state has preempted the authority of cities to regulate billboards along federal-aid highways within their boundaries. We affirm the trial court's judgment, however, on the basis of Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1969).
GRIMES and DANAHY, JJ., concur.
NOTES
[1] Sec. 3-1. Statement of purpose.

The objective of this chapter is to establish requirements which promote convenience, safety, property values and aesthetics while granting equal protection and fairness to all property owners.
(a) Convenience. The chapter is designed to encourage signs which help to visually organize the activities of the city, lend order and meaning to business identification and make it easier for the public and business delivery systems to locate and identify their destinations.
(b) Safety. The requirements with regard to placement, installation, maintenance, size and location of signs act to minimize unnecessary distractions to motorists, protect pedestrians and provide safe working conditions for those persons who are required to install, maintain, repair and remove the signs and their structures.
(c) Property values and aesthetics. An offensive sign is as detrimental to property values as an offensive odor or sound. Sign, sound and odor influence the value of property in the neighborhood and community. The city has the obligation to promote the general welfare. This includes enhancement of property values by enacting and enforcing ordinances which create a more attractive business climate and make Lake Wales a more desirable city in which to visit, trade, work, and live.
[2] Sec. 3-10(d)(3). Billboards.

A billboard is defined as any signboard, poster panel, or similar structure bearing or intended for an advertising message of any commodity, product, service enterprise, or identity not directly related to or associated with the site upon which the structure is located. The use of a billboard is subject to the following restrictions.
(a) The location of the billboard shall be confined to areas designated a highway commercial district or industrial district.
(b) The owner of the billboard shall secure any permit required by state statutes.
(c) The billboard structure must comply with City set-back requirements.
(d) The billboard can only be located on an unimproved parcel.
(e) The billboard cannot be larger than 200 square feet in size.
(f) The height from the ground to the top of the billboard shall not be more than 20 feet.
(g) The length of the billboard shall not be more than 20 feet.
(h) In commercial areas, no billboard shall be located less than 1,000 feet from another billboard. In industrial areas, no billboard shall be located less than 600 feet from any off-site advertising billboard.
[3] Sec. 3-3. Definitions.

(h) Signable area of a building. A rectangular area on the facade of a building which is free of windows and doors or major architectural detail. Any portion of a roof less than twenty (20) feet from the ground is included.
Sec. 3-8. Industrial signs.
(a) Wall-mounted sign. Each business is entitled to one sign for each wall of its building which faces a public street. The sign on the front wall may occupy thirty (30) per cent of the signable area. A sign on a side wall shall be the same size as the sign on the front wall or thirty (30) per cent of the signable area of the side wall, whichever is less.
(b) Ground-mounted sign. If the nearest edge of a building wall is set back from the edge of the adjacent street by thirty-five (35) feet or more and the property otherwise complies with landscaping and off-street parking requirements, a business may also have a ground-mounted sign. The maximum allowable area for each of two faces (1) and height (2) depend on driving lanes and the controlling speed limit and are as follows:

 Speed limit 2 Lanes 4 Lanes
 35 mph (1) 42 sq. ft. (1) 64 sq. ft.
 or less (2) 20 ft. (2) 24 ft.
 More than (1) 64 sq. ft. (1) 108 sq. ft.
 35 mph (2) 24 ft. (2) 26 ft.

Spacing. Ground-mounted signs may be displayed only on a frontage of one hundred (100) feet or more and may not be close[r] than one hundred (100) feet to any other ground-mounted sign.
Sec. 3-9. Commercial signs.
(a) Wall-mounted sign. Each business is entitled to signage on each wall of its building which faces a public street or mall. The area on the front wall may occupy forty (40) per cent of the signable area. The area on a side wall may be the same size as the sign on the front wall or forty (40) per cent of the signable area of the side wall, whichever is less.
.....
(b) Ground-mounted sign. If the nearest edge of a building wall is set back from the edge of the adjacent street by thirty-five (35) feet or more and the property otherwise complies with landscaping and off-street parking requirements, a business may also have a ground-mounted sign. The maximum allowable area for each of two faces (1) and height (2) depend on driving lanes and the controlling speed limit and are as follows:

 Speed limit 2 Lanes 4 Lanes
 35 mph (1) 42 sq. ft. (1) 64 sq. ft.
 or less (2) 20 ft. (2) 24 ft.
 More than (1) 64 sq. ft. (1) 108 sq. ft.
 35 mph (2) 24 sq. ft. (2) 26 ft.

Spacing. Ground-mounted signs may be displayed only on a frontage of seventy-five (75) feet or more and may not be closer than seventy-five (75) feet to any other ground-mounted sign.
[4] The court relied on Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960), and City of Sarasota v. Sunad, Inc., 181 So.2d 11 (Fla. 2d DCA 1965). In Sunad, Inc. v. City of Sarasota, the supreme court stated:

This controversy devolves, then, into the question whether or not the ordinance operates to put the petitioner out of business, or so to cripple its business, as to amount to an unreasonable and discriminatory invasion of its rights, hence an exercise of the police power which aesthetics do[es] not warrant.
122 So.2d at 614 (emphasis added).
[5] We do not address the question of whether the City's ordinance would have been valid had its restrictions on on-site signs also applied to billboards. Since the issue in the case focused on aesthetics, the court apparently did not consider whether the ordinance's provisions regarding billboards were reasonably related to the achievement of its other objectives, business convenience and safety. Even though Florida, under the Sunad cases, does not permit different treatment of on-site signs and billboards on the basis of aesthetics, it has long recognized a distinction in the regulation of these signs on grounds other than aesthetics, primarily highway safety. In Hav-A-Tampa Cigar Co. v. Johnson, 149 Fla. 148, 5 So.2d 533 (1941), our supreme court upheld a state statute regulating billboards in order to enhance highway safety. See §§ 479.11,.16, Fla. Stat. (1979). The Third District Court of Appeal relied on Hav-A-Tampa Cigar Co., in State v. Miami, 193 So.2d 449 (Fla. 3d DCA), cert. denied, 201 So.2d 553 (1967), in upholding an exception for on-site signs in an ordinance prohibiting construction of billboards within 600 feet of an expressway on the basis of highway safety. See also E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir.1970).
[6] In rejecting the spacing restrictions, the court stated:

A view of the zoning map of Lake Wales reflects that the industrial zones are located in such areas as to be [of] little or no use to any off-site advertiser. The 1,000 foot spacing requirement in commercial areas must be read in light of [the] original position of the City which is that it is so small that it should be allowed to be an island onto [sic] itself and not have off-site advertising.
The trial court apparently used the spacing restrictions as a vehicle to find the zoning of the City unreasonable. Nevertheless, we find no merit to the spacing restrictions judging them on aesthetics. Such restrictions might be sustainable if reasonably related to the elimination of traffic hazards, however.
[7] The court also concluded that prohibiting billboards did not infringe upon the first amendment protection of commercial speech. In the present case, the first amendment issue was not litigated although Lamar raised it in its complaint. Hence, we do not reach it. For a discussion of the arguments concerning the issue, see both the majority and dissenting opinions in Metromedia, Inc. v. City of San Diego, 26 Cal.3d 848, 610 P.2d 407, 164 Cal. Rptr. 510, probable jurisdiction noted, ___ U.S. ___, 101 S.Ct. 265, 66 L.Ed.2d 127 (1980).
[8] Yokley included the following footnote in support of his statement:

43. United Adv. Corp. v. Borough of Raritan, 11 N.J. 144, 93 A.2d 362 (1952); Thomas Cusack Co. v. City of Chicago, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917); Stoner McCray Sys. v. City of Des Moines, [237 Iowa 1313] 78 N.W.2d 843 (1956) (dictum); United Adv. Corp. v. Borough of Metuchen, 42 N.J. 1, 198 A.2d 447 (1964); Ghaster Properties, Inc. v. Preston, 176 Ohio St. 425, 200 N.E.2d 328 (1964); National Adv. Co. v. Cooley, [126 Vt. 263], 227 A.2d 406 (1967), sustaining zoning ordinance directed toward billboard regulation; Ashburn v. Zoning Bd. of Review of Pawtucket, 251 A.2d 524 [105 R.I. 304], (1969); Board of Adjustment of Fayetteville v. Osage Oil & Transp., Inc., [258 Ark. 91], 522 S.W.2d 836, appeal dismissed, 423 U.S. 941, 96 S.Ct. 350, 46 L.Ed.2d 273 (1975), sustaining the right to regulate the size and location of billboards and other commercial signs. See also John Donnelly & Sons v. Outdoor Adv. Bd., [361 Mass. 746], 282 N.E.2d 661 (1972), sustaining a prohibition of billboards within 500 feet of churches, schools and other public buildings; Inhabitants of Boothbay v. National Adv. Co., 347 A.2d 419 (Me. 1975), sustaining the prohibition of all off-premises advertising signs, the court holding that the allowance of ten months for the owners of existing signs to remove them did not constitute a taking of property without just compensation.
[9] See note 2 supra.