414 So.2d 1030 (1982)
CITY OF LAKE WALES, Florida, Petitioner,
v.
LAMAR ADVERTISING ASSOCIATION OF LAKELAND, FLORIDA, Respondent.
No. 60635.
Supreme Court of Florida.
April 8, 1982.
Rehearing Denied June 28, 1982.
Robin Gibson of Gibson & Connor, Lake Wales, for petitioner.
Michael D. Martin of Martin & Martin, Lakeland, for respondent.
Michael S. Davis, Chief Asst. City Atty., St. Petersburg, for City of St. Petersburg, amicus curiae.
Gerald S. Livingston of Livingston & Laubach, Orlando, for Florida Outdoor Advertising Ass'n, Inc., amicus curiae.
Thomas M. Harris of Harris, Barrett & Dew, St. Petersburg, for Metromedia, Inc., amicus curiae.
John M. McNatt, Jr. and J. Stephen O'Hara, Jr. of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for The Outdoor Advertising Ass'n of Florida, amicus curiae.
Talbot D'Alemberte and Jeffrey Bercow of Steel, Hector & Davis, Miami, and Eric J. Rubin of Rubin & Winston, Washington, D.C., for Ackerley Communications of Florida, Inc., amicus curiae.
McDONALD, Justice.
The Second District Court of Appeal has certified the following question as being of great public importance:
Can a municipality separately classify off-site advertising signs and on-site signs solely on the basis of aesthetics, thereby restricting the size of off-site signs?
City of Lake Wales v. Lamar Advertising Association, 399 So.2d 981, 987 (Fla. 2d DCA 1981). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the affirmative.
In March 1978 Lake Wales amended its sign ordinance to prohibit all off-premises signs. Prior to this amendment, the city's sign code permitted off-site signs, but limited their size to 200 square feet. Lamar is in the business of installing and maintaining outdoor advertising signs, specifically 300-square-foot billboards that carry both local and nationally distributed advertisements. In May 1978 Lamar applied to the *1031 city for a permit to install a 300-square-foot billboard on a leased site in a commercially zoned area of Lake Wales. The city denied the application.
Lamar sued for issuance of the permit, and the trial court held the ordinance unconstitutional. Pursuant to the court's order to consider amending the ordinance, the city again revised its sign code. The amendment permitted off-site signs in commercial and industrial districts and limited their size to 200 square feet. The parties submitted the new ordinance to the trial court by stipulation. The court held it unconstitutional, finding the ordinance both unreasonable and discriminatory.
On appeal the city challenged two aspects of the judgment: (1) holding the 200-square-foot limit unconstitutional and (2) ruling that the state Department of Transportation's Highway Beautification Program preempted municipal billboard regulations. The district court held that the state beautification program had not preempted local regulation, but upheld declaring the ordinance unconstitutional. Relying on Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960), as did the trial court, the district court found "no valid reason for distinguishing between billboards and on-site advertising signs." 399 So.2d at 985. Recognizing a trend toward change in this area of the law, however, the court certified the question set out above.
Several months after the issuance of the instant district court decision, the United States Supreme Court released its opinion in Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). San Diego enacted an ordinance prohibiting outdoor advertising display signs except for on-site signs and those fitting within twelve specified categories.[1] With two justices concurring in the judgment, the court's plurality found that the ordinance violated the first amendment by impermissibly affording more protection to commercial speech than to noncommercial speech.
In its exhaustive and comprehensive opinion leading to striking down San Diego's ordinance, the plurality sustained the distinction between off-site and on-site signs as set out in Suffolk Outdoor Advertising Co., Inc. v. Hulse, 43 N.Y.2d 483, 373 N.E.2d 263, 402 N.Y.S.2d 368 (1977), appeal dismissed, 439 U.S. 808, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978). In Suffolk the New York Court of Appeals upheld a town ordinance totally banning off-premises or nonaccessory billboards. Because the ordinance did not attempt to regulate the content of the signs, regulating only the place and manner of their maintenance, the court found no first amendment violation.[2] The court went on to find that regulation of outdoor advertising for aesthetic purposes alone is a valid exercise of the police power and that the ordinance in question met the two-part test of having a valid basis and of being reasonably related to the objective for which it was enacted.[3]
Prior to Sunad, this Court had recognized that there is a relationship between signs and the general welfare and well-being of a community from the standpoint of aesthetics. Dade County v. Gould, 99 So.2d 236 (Fla. 1957); Merritt v. Peters, 65 So.2d 861 (Fla. 1953). See City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941). Indeed, in Merritt this Court ruled that the size of signs could be restricted on the basis of aesthetics alone. Sunad followed this line of reasoning, and the Court agreed that aesthetic considerations can be just cause for regulating signs.
*1032 The Sunad Court, however, refused to recognize any aesthetic difference between on- and off-site signs. As pointed out by the district court in its well-documented opinion,[4] numerous jurisdictions have gone the opposite direction. We find this Court's refusal in Sunad to recognize an aesthetic difference between on-site and off-site signs to be contrary to the majority and better-reasoned view, and we recede from that holding. We agree that "[z]oning solely for aesthetic purposes is an idea whose time has come; it is not outside the scope of the police power." Westfield Motor Sales Co. v. Town of Westfield, 129 N.J. Super. 528, 539, 324 A.2d 113, 119 (1974).
Cities have the authority to take steps to minimize sight pollution and, if in doing so they find it reasonably necessary to make a distinction between on-site and off-site signs, there is no constitutional impediment preventing that distinction. We therefore answer the district court's question in the affirmative, and, while the district court acted responsibly by following the decisions of this Court, we now disapprove that portion of the opinion dealing with the question, and remand for reconsideration in light of our answer. We approve the district court's holding that the state highway beautification program does not preempt municipal regulations which establish more stringent requirements than those set out in chapter 479, Florida Statutes (1979).
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON and ALDERMAN, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] The categories included, among other signs, governmental signs, religious symbols, and time-temperature-news signs. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 2886, 69 L.Ed.2d 800 (1981).
[2] We find the instant ordinance narrower than that of San Diego and, therefore, closer to the ordinance in Suffolk. The text of the Lake Wales billboard ordinance is set out in 399 So.2d at 982 n. 2.
[3] Numerous jurisdictions besides New York have addressed regulations prohibiting advertising signs with many cases collected at Annot., 81 A.L.R.3d 486 (1977).
[4] 399 So.2d at 985.