421 So.2d 1084 (1982)
CITY OF SUNRISE, Appellant,
v.
D.C.A. HOMES, INC. F/K/a Oakhill Homes, Inc., Appellee.
No. 79-2094.
District Court of Appeal of Florida, Fourth District.
September 8, 1982.
Rehearing Denied December 8, 1982.
Grafton N. Carlson and Arthur B. Parkhurst of Parkhurst, Pickford, Ayres & Carlson, Fort Lauderdale, for appellant.
Gary M. Farmer of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for appellee.
PER CURIAM.
The City of Sunrise appeals from an order of the Broward Circuit Court which declared its "Sign Code" unconstitutional.
Appellee, a real estate developer engaged in the manufacturer and marketing of residential housing within the City of Sunrise, utilizes and relies heavily upon billboard advertising.[1] Appellee maintained at least twelve such signs located throughout the City. With the enactment of Ordinance 53-A, these billboards became illegal because they constitute what the ordinance *1085 refers to as "off-site" signs.[2] The ordinance provides that only one off-site sign may be erected per subdivision.[3]
Appellee sued to enjoin the City from enforcing Ordinance 53-A, alleging that it was unconstitutional. The trial court agreed, specifically concluding:
2. Ordinance Number 53-A is an unreasonable exercise of the police powers of the defendant, predicated, as it is, on esthetics alone, because it constitutes an abridgment of plaintiff's freedom of speech guaranteed by Article I, § 4 of the Florida Constitution and the First Amendment of the United States Constitution.
... .
6. The defendant has failed to establish a compelling governmental interest as a basis for enacting Ordinance Number 53-A, which contains an abridgment on free speech; and plaintiff has further failed to provide the least drastic interference with plaintiff's First Amendment freedoms to advertise its developments. Ordinance Number 53-A therefore violates the First Amendment to the United States Constitution.
The stated purpose of Ordinance 53-A is to enhance the aesthetic appeal of the City of Sunrise. Florida has long recognized that local governments may legislate to protect the appearance of their communities as a legitimate exercise of their inherent police power. Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960). If any doubt remained as to the propriety of such legislation, surely such was put to rest by the recent United States Supreme Court decision in Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), which unequivocally recognized that protection of aesthetic interests is a substantial government goal. Therefore, we disagree with that portion of the lower court's order which declares that aesthetics, in and of itself, is not a "compelling governmental interest."[4]
We next focus our attention on the concern expressed by the trial court, and appellee, as to the adverse impact which Sunrise's ordinance will have on appellee's business. Such considerations are not germane to the issue at hand, but we are not unsympathetic with the plight of appellee should the ordinance be allowed to stand. However, our responsibility concerns only the constitutionality of the ordinance. The legislature, or in this case the city council, has the duty of considering the ramifications of its enactments. Once this duty has been fulfilled by the passage of a law, it is not the function of the courts to pass on its wisdom. If the law bears a reasonable relation to legitimate governmental interests, the courts will uphold the law as a proper exercise of the government's inherent police power. In this regard, we quote the opinion of the First Circuit in John Donnelly & Sons v. Campbell, 639 F.2d 6 (1st Cir.1980), where the court said:
Plaintiffs complain of the enormity of legislation which would abolish their entire business, per se. Times change, and business with them. The iceman no longer cometh, the buggy whip manufacturer has passed from the scene, and one could name countless enterprises that have failed because of a change in public demand or sentiment. Equally, public concern may overcome the economic interests *1086 of private individuals, and a state may wholly prohibit a heretofore lawful business and destroy an entire industry.
Id. at 14-15.
The test which we now employ to determine the constitutionality of the ordinance is that set forth by the Supreme Court in Central Hudson v. Public Service Comm'n of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
In commercial speech cases, then, a fourpart analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within the provision, it at least must concern lawful activity and not be misleading. Next, we ask if the asserted government interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
Id. at 566, 100 S.Ct. at 2351.
No question exists as to the legality of appellee's business. Likewise, we have already acknowledged that appellant has a substantial interest in aesthetics. We also conclude that the ordinance directly advances the City's asserted interest and that the ordinance is not more extensive than is necessary to serve the City's interest. Therefore, the ordinance meets the tests enunciated in Hudson, supra. Here, the ordinance applies only to commercial signs. In Metromedia, Inc., supra, the Supreme Court found the San Diego ordinance unconstitutional on its face because the ordinance afforded a greater degree of protection to commercial speech than to non-commercial speech. The ordinance sub judice does not prohibit non-commercial signs nor does it afford commercial signs a preferred status.[5]
Lastly, the Supreme Court of Florida has affirmatively answered the question, "Can a municipality separately classify off-site advertising signs and on-site signs solely on the basis of aesthetics thereby restricting the size of off-site signs?" City of Lake Wales v. Lamar Advertising Ass'n, 414 So.2d 1030 (Fla. 1982). In answering this question the Supreme Court found it necessary to recede in part from Sunad, supra, and recognize that a valid distinction exists between on- and off-site signs.
The Sunad Court, however, refused to recognize any aesthetic differences between on- and off-site signs. As pointed out by the district court in its well-documented opinion, numerous jurisdictions have gone the opposite direction. We find this Court's refusal in Sunad to recognize an aesthetic difference between on-site and off-site signs to be contrary to the majority and better-reasoned view, and we recede from that holding. We agree that "[z]oning solely for aesthetic purposes is an idea whose time has come; it is not outside the scope of the police power." Westfield Motor Sales Co. v. Town of Westfield, 129 N.J. Super. 528, 539, 324 A.2d 113, 119 (1974).
Cities have the authority to take steps to minimize sight pollution and, if in doing *1087 so they find it reasonably necessary to make a distinction between on-site and off-site signs, there is no constitutional impediment preventing that distinction. (Footnotes omitted)
Id. at 1032.
Accordingly, we find that the trial court erred when it held City of Sunrise Ordinance 53-A unconstitutional and remand this cause with instructions to dissolve the injunction prohibiting enforcement of Ordinance 53-A and for such other orders as may be consistent herewith.
REVERSED and REMANDED.
LETTS, C.J., DELL, J., and OWEN, WILLIAM C., Jr., (Retired) Associate Judge.
NOTE: DELL, J., did not participate in oral argument but has reviewed the recorded presentation made at that proceeding.
NOTES
[1] The lower court found:

Plaintiff's off-site billboard directional signs are necessary in the marketing of its homes; and approximately 40-50% of all purchasers seen by plaintiff's sales agents at the model homes originated because of these off-site billboard signs.
[2] City of Sunrise Ordinance 53-A defines an off-site sign as follows:

Off-premises sign (off-site, billboard sign):
This a third party sign. It is a sign that advertises goods, products, services, or facilities or directs persons to a different location from where the sign is installed.
[3] Section 7.1(e) of the ordinance provides:

"One sign shall be allowed per subdivision... ." Apparently this provision applies only to off-site signs. In the case of on-site signs, the ordinance would allow [Section 4.1(b)]:
For multiple family uses, no more than two identification signs for each developed parcel or building as determined by the Administrator of this Code, each not exceeding six square feet of area.
[4] We note that neither the court below, nor the parties, had the benefit of Metromedia when this case was heard and decided.
[5] Section 1.1 provides:

Statement of Purpose:
The code creates the legal framework for commercial signage regulations that is intended to facilitate an easy and agreeable communication between people. It recognizes the need for well maintained and attractive appearance in a community and the need for adequate business identification and advertising and communication. This code recognizes that aesthetics and design quality cannot be satisfactorily legislated as individual opinions vary and general public opinions vary from one era to another. It is recognized, however, that a great percentage of that which is unattractive can be eliminated by sensible quality control, through adequate maintenance and inspection and by reasonable guidelines formulated to minimize clutter.
Section 2.2 provides in pertinent part:
In summary this Code is designed to prevent a vast majority of those things which are undesirable in commercial signage without hampering the inherent right of business to communicate reasonably, to advertise and to reasonably assist a potential customer to conveniently locate and identify any product, good, service, or facility which he may desire to use or purchase at any given time.