931 So.2d 922 (2006)
POLK COUNTY, a political subdivision of the State of Florida, Appellant,
v.
James C. MITCHELL, III, d/b/a We Buy Homes, Inc., We Buy Houses and I Buy Houses, Appellee.
No. 2D05-1212.
District Court of Appeal of Florida, Second District.
January 6, 2006.
*924 Joseph G. Jarret, County Attorney, and Ngozichukwu C. Acholonu, Assistant County Attorney, Bartow, for Appellant.
Stephen M. Knapp, Lakeland, for Appellee.
ALTENBERND, Judge.
Polk County appeals an order denying its request for a temporary mandatory and prohibitory injunction against James C. Mitchell, III, d/b/a We Buy Homes, Inc., We Buy Houses, and I Buy Houses (Mr. Mitchell). The trial court denied the request based upon its conclusion that the County's complaint for injunctive relief must allege the proposed wording of the injunction requested. We reverse because the rules of procedure contain no such requirement. The nature and general terms of the injunction requested by the County were clear, and the County established an entitlement to that injunction. The trial court may have had discretion concerning the content of its order granting injunctive relief, but it had no discretion to deny relief. Accordingly, we remand for entry of a temporary injunction.
On June 30, 2004, Polk County filed a verified complaint against Mr. Mitchell. The complaint alleged that Mr. Mitchell did business under the names, "We Buy Homes, Inc.," "We Buy Houses," and "I Buy Houses." He was continuously violating sections 760E.4 and 760F.18 of the Polk County Land Development Code by posting unauthorized and unapproved business signs in the rights-of-way on metal stakes or on utility poles in the unincorporated areas of Polk County.[1] The signs varied in content, but often stated: "We Buy Homes, Fast Cash, Any Price/Condition" and contained a 1-800 telephone number. Allegedly, a call to the 1-800 number required the caller to leave a voicemail, and it was very difficult for the County to determine the identity of the person posting these signs. The complaint also alleged that the placement of the signs adversely impacted the neighborhoods in which they were placed and that the County was spending unnecessary efforts and resources attempting to remove the signs.
In the introductory paragraphs, the complaint described the lawsuit as an action "for permanent and temporary mandatory and prohibitory injunctive relief," and in the final paragraphs the County requested the "court issue temporary and permanent injunctions against [Mr. Mitchell]." Mr. Mitchell answered the complaint, but he did not challenge the sufficiency of the complaint or assert any affirmative defenses.
At the hearing on the County's request for a temporary injunction, Mr. Mitchell appeared with counsel. The County presented evidence supporting the allegations *925 of its complaint. In his defense, Mr. Mitchell admitted that he used signs to advertise his businesses but denied placing them in the rights-of-way. He also presented photographs of numerous other signs by other businesses, apparently attempting to prove selective enforcement.
At the conclusion of the hearing, the trial judge suggested that there were numerous problems with the pleadings in the case, beginning with the fact that the complaint did not specify the exact conduct to be enjoined. The attorney for the County responded that the County was seeking an injunction enjoining Mr. Mitchell from "violating Land Development Code 760, as stated in the complaint." The court stated that the complaint should have alleged with greater specificity the conduct that the County sought to enjoin. The court also faulted Mr. Mitchell for not raising his selective enforcement claims as an affirmative defense. Based upon these concerns, the court concluded that the County could not establish a substantial likelihood of success on the merits, even though the court concluded that the County had established irreparable harm and the absence of an adequate remedy at law. The court thus denied the County's request for a temporary injunction, but indicated that the County could amend the complaint to state with specificity the text of the injunction it sought.[2]
The trial court erred as a matter of law when it required the County to plead the content of the proposed injunction. Admittedly, an order granting a temporary injunction must strictly comply with Florida Rule of Civil Procedure 1.610(c), which requires that every injunction entered by a trial court "shall specify the reasons for entry, [and] shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document." Randolph v. Antioch Farms Feed & Grain Corp., 903 So.2d 384, 385 (Fla. 2d DCA 2005). Thus, as this case demonstrates, it may be useful for a plaintiff to allege these details. However, there is no legal requirement or rule requiring the party seeking an injunction to include within the complaint the specific wording of the injunction requested. Rather, in a petition for injunction, "every necessary fact" supporting the issuance of an injunction "should be clearly, definitely and unequivocally alleged and there must be something more than the conclusions and opinions of the plaintiffs." Cent. & S. Fla. Flood Control Dist. v. Scott, 169 So.2d 368 (Fla. 2d DCA 1964); see also Stanton v. Harris, 152 Fla. 736, 13 So.2d 17 (1943).
As to the County's request for a prohibitory injunction, there was little dispute in this case concerning the primary text of any temporary injunction. It would include a provision prohibiting Mr. Mitchell from violating the specific county ordinances cited in the complaint by placing his unauthorized and unapproved business signs on poles or in the rights-of-way in unincorporated areas of Polk County while this lawsuit is pending. As to the mandatory injunction, the trial court's ruling cut short any discussion regarding the appropriate language for any mandatory injunction. Mandatory injunctions are not favored, see City of Indian Rocks Beach v. Tomalo, 834 So.2d 341, 342 (Fla. 2d DCA 2003), and the trial court may have had more discretion concerning this aspect of the case. It seems obvious, however, that an injunction could have contained language mandating that Mr. Mitchell remove and properly dispose of all offending signs within a reasonable time. Any additional *926 specifics regarding the injunction actually entered should have been resolved between the parties and the court once the court determined that the County had sufficiently established its entitlement to an injunction.[3]
Because the trial court erred as a matter of law, we have further examined this case to determine whether the trial court would have had discretion to completely deny the County's request for an injunction. We conclude that it did not have that authority. The issuance of an injunction is generally supported by showing (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) a threatened injury to the petitioner that outweighs any possible harm to the respondent; and (4) that the granting of the injunction will not disserve the public interest. See P.M. Realty & Invs., Inc. v. City of Tampa, 779 So.2d 404, 406 (Fla. 2d DCA 2000). Where a government seeks an injunction in order to enforce its police power, the first element is established; that is, "any alternative legal remedy is ignored and irreparable harm is presumed." Metro. Dade County v. O'Brien, 660 So.2d 364, 365 (Fla. 3d DCA 1995); see also P.M. Realty & Invs., 779 So.2d at 406; Miami-Dade County v. Fernandez, 905 So.2d 213, 215 (Fla. 3d DCA 2005).
The County also established the three remaining factors. The County presented evidence that Mr. Mitchell is violating the ordinance and therefore that it would be substantially likely to succeed on the merits in seeking to permanently enjoin Mr. Mitchell from future violations. The County's failure to more specifically state the text of the injunction requested does not diminish its likelihood of success in obtaining an injunction enjoining further violations. Additionally, an injunction merely requiring compliance with binding laws cannot be said to unduly harm Mr. Mitchell or to be a disservice to the public.[4]
Accordingly, the trial court was required to issue a temporary injunction because the County established a clear legal right to relief. See Fernandez, 905 So.2d at 216; O'Brien, 660 So.2d at 365. We therefore reverse the order denying the County's request for a temporary injunction and remand with directions to enter a temporary injunction prohibiting Mr. Mitchell from violating Polk County Land Development Code sections 760E.4 and 760F.18. We leave to the trial court's discretion the decision concerning the terms of a mandatory injunction, if any is entered.
Reversed and remanded.
CASANUEVA and SALCINES, JJ., Concur.
NOTES
[1] Polk County Land Development Code § 760E.4 states: "No sign shall be erected, tacked, nailed, painted, posted, or affixed in any manner on utility poles or natural features such as trees or rocks." Section 760F.18 states: "No sign shall be placed or erected on a[sic] public rights-of-way unless approved by the County Transportation Department or the Florida Department of Transportation."
[2] Although the County prevails in this appeal, it may have been more expedient and cost-effective for the County to have amended its complaint to satisfy the trial court's wishes and to have reset a hearing on its request for temporary injunction.
[3] We are aware that parties often set hearings on temporary injunctions that do not provide adequate time for the court to negotiate the terms of the injunction. In this case, however, nothing suggests that the trial court's ruling was influenced by time constraints.
[4] Further, even if Mr. Mitchell had raised selective enforcement as a defense, his evidence that the County was not enforcing these code provisions against other offenders did not support a claim of selective enforcement that would have prevented the entry of an injunction. To establish a defense of selective enforcement, there must be more than a mere failure to prosecute all offenders; the selective enforcement must be deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification. See Thomas v. State, 583 So.2d 336, 340 (Fla. 5th DCA 1991). Mr. Mitchell presented no evidence that the "selective" enforcement was motivated by anything other than a lack of resources to adequately enforce all violations.