CORTIÑAS, J.
Malibu Lodging Investments, LLC, (“Malibu”) is the owner of the City Inn, a multi-story hotel (the “Hotel”) abutting Interstate 95 and located within Miami-Dade County (the “County”). For some time, Malibu has been selling space on the north, south, and east sides of the Hotel for outdoor advertising signage[1] (“adver *718 tising signage”). The County determined that this advertising signage violated several provisions of Chapter 33 of its Code of Ordinances (the “Code”) and filed suit against Malibu seeking injunctive relief, civil penalties, and attorney’s fees as well as administrative costs. Following a hearing, the trial court denied the County’s motion for preliminary injunctive relief and dismissed the lawsuit, with prejudice. In ruling, the trial court found that 1) it lacked jurisdiction over the matters raised in the complaint, 2) the County was without standing, 3) sections 33-121.10 and 33-121.12 of the Code (the “Ordinances”) are unconstitutional, and 4) the County failed to maintain a cause of action for preliminary injunctive relief. The County now seeks review of the denial of preliminary injunctive relief and the dismissal, with prejudice, of its lawsuit. We reverse.
The County is granted broad home rule and police powers under Florida law. As specifically set forth in the Florida Constitution: “[a]ll provisions of the Metropolitan Dade County Home Rule Charter ... shall be valid, and any amendments to such charter shall be valid....” Art. VIII, § 6(e), Fla. Const. Further, “[t]o the extent not inconsistent with the powers of existing municipalities or general law, [the County] may exercise all the powers conferred now or hereafter by general law upon municipalities.” Art. VIII, § 6(f), Fla. Const. Thus, the County is provided
governmental, corporate and propriety powers to enable [it] to conduct [County] government, perform [County] functions and render [County] services, and may exercise any power for [County] purposes except as otherwise provided by law.
Art. VIII, § 2(b), Fla. Const. Chapter 125, Florida Statutes (2008), codifies the County’s broad home rule powers. Section 125.01, Florida Statutes, in pertinent part, states:
(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power includes, but is not restricted to, the power to:
[[Image here]]
(h) Establish, coordinate, and enforce zoning and such business regulations as are necessary for the protection of the public.
§ 125.01 (1)(h), Fla. Stat. (2008). More specifically, section 125.0102 provides that “[n]othing in chapter 78-8, Laws of Florida, shall be deemed to supersede the rights and powers of municipalities and counties to establish sign ordinances; however, such ordinances shall not conflict with any applicable state or federal laws.” § 125.0102, Fla. Stat. (2008).
In Citizens for Reform v. Citizens for Open Government, Inc., 931 So.2d 977, 980 (Fla. 3d DCA 2006), we noted that, in the particular case of Miami-Dade County, the Florida Constitution:
provides that ... the county charter:
[m]ay grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for violation thereof; to levy and collect such taxes as may be authorized by general law and no other taxes, and to do everything necessary to carry on a central *719 metropolitan government in Dade County.
The Florida Constitution further provides that the section authorizing a home rule charter of government for Miami-Dade County “shall be liberally construed” to carry out the purpose of home rule for the people of Miami-Dade County in local affairs.
Id. (quoting Art. VIII, § 6(e), n. 3, Fla. Const.). Accordingly, the County is granted the authority, under its broad home rule and police powers, to enact local ordinances, including sign ordinances, which are not preempted by, or inconsistent with, general law.
Under Florida law, “[a] regularly enacted ordinance will be presumed to be valid until the contrary is shown, and a party who seeks to overthrow such an ordinance has the burden of establishing its invalidity.” Lowe v. Broward Cnty., 766 So.2d 1199, 1203 (Fla. 4th DCA 2000) (quoting State ex rel. Office Realty Co. v. Ehinger, 46 So.2d 601, 602 (Fla.1950)). Additionally, “[w]here there is no direct conflict ... appellate courts should indulge every reasonable presumption in favor of an ordinance’s constitutionality.” City of Kissimmee v. Fla. Retail Fed’n Inc., 915 So.2d 205, 209 (citation omitted); see also Lowe, 766 So.2d at 1203 (“An appellate court will ‘indulge every reasonable presumption in favor of an ordinance’s constitutionality.’ ”) (quoting City of Pompano Beach v. Capalbo, 455 So.2d 468, 469 (Fla. 4th DCA 1984)).
Chapter 479, Florida Statutes (2008), governs state regulation of outdoor advertising. However, chapter 479 also clearly establishes that “[t]he provisions of this chapter shall not be deemed to supersede the rights and powers of counties and municipalities to enact outdoor advertising or sign ordinances.” § 479.155, Fla. Stat. (2008); see also § 125.0102, Fla. Stat. (“Nothing in chapter 78-8, Laws of Florida, shall be deemed to supersede the rights and powers of ... counties to establish sign ordinances; however, such ordinances shall not conflict with an applicable state or federal laws.”).
Section 33-121.12 of the County Code provides in pertinent part:
Signs prohibited in protected areas.
It shall be unlawful hereafter for any person, firm or corporation, or any other legal entity to erect, permit or maintain any sign in protected areas, except as provided hereinafter.
Miami-Dade County, Fla., Code of Ordinances, Ch. 33, § 33-121.12. “Protected areas,” as defined in section 33-121.10, include:
[A]ll property in Miami-Dade County within six hundred (600) feet of the right-of-way of any expressway right-of-way. ...
Miami-Dade County, Fla., Code of Ordinances, Ch. 33, § 33-121.10. The County enacted the Ordinances under its police power. Specifically, Chapter 33 provides:
(a) The purpose of this chapter ... is to permit signs that will not, because of size, location, method of construction and installation, or manner of display:
(1) Endanger public safety; or
(2) Create distractions that may jeopardize pedestrian or vehicular traffic safety; or
(3) Mislead, confuse, or obstruct the vision of people seeking to locate or identify uses or premises; or
(4) Destroy or impair aesthetic or visual qualities of Miami-Dade County which is so essential to tourism and the general welfare[.]
Miami-Dade County, Fla., Code of Ordinances, Ch. 33, §§ 33-83(a)(1)-(4) (emphasis added).
*720 It is well established under Florida law that “local governments may legislate to protect the appearance of their communities as a legitimate exercise of their inherent police power.” City of Sunrise v. D.C.A. Homes, Inc. f/k/a Oakhill Homes, Inc., 421 So.2d 1084, 1085 (Fla. 4th DCA 1982). The United States Supreme Court has also “unequivocally recognized that protection of aesthetic interests is a substantial government goal.” Id. (citing Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981)); see also Dep’t of Cmty. Affairs v. Moorman, 664 So.2d 930, 933 (Fla.1995) (“[W]e have repeatedly held that zoning restrictions must be upheld unless they bear no substantial relationship to legitimate societal policies.”); Lamar Adver. of Mobile, Inc. v. City of Lakeland, 980 F.Supp. 1455, 1459 (M.D.Fla.1997) (“It is well settled law that a municipality may exercise its police powers to advance aesthetic interests and to promote public safety.”) (citing Members of the City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)); City of Lake Wales v. Llamar Adver. Ass’n of Lakeland, Fla., 414 So.2d 1030, 1032 (Fla.1982) (“We agree that ‘[zjoning solely for aesthetic purposes is an idea whose time has come; it is not outside the scope of the police power.’ ”) (quoting Westfield Motor Sales Co. v. Town of Westfield, 129 N.J.Super. 528, 324 A.2d 113, 119 (1974)); Lamar-Orlando Outdoor Adver. v. City of Ormond Beach, 415 So.2d 1312 (Fla. 5th DCA 1982). Under the facts of this case, and as is evident from the breadth of case law on the matter, it is clear that the enactment of the Ordinances was a proper exercise of the County’s broad home rule and police powers.
In large part, the trial court determined that the Ordinances were unconstitutional because section 33-121.15 eliminates the possibility of obtaining a variance.[2] In support of its ruling, the trial court cited Innkeepers Motor Lodge, Inc. v. City of New Smyrna Beach, 460 So.2d 379 (Fla. 5th DCA 1984). Innkeepers involved an owner who had purchased a parcel of property with the intent of constructing a full service hotel prior to the enactment of density restrictions which limited hotels in his area to twenty-four units per acre. Id. The evidence in Innkeepers demonstrated that “the highest and best use of the property, indeed, its only reasonable use, was to build a full service hotel thereon,” and, because of the mandatory density restrictions, the owner was precluded from doing so. Id. at 280. Moreover, the appellate court found that “it is clear the figures for the density cap were arbitrarily adopted: the group that initiated the referendum process failed to conduct a study to justify the ... figures.... In fact, no one seems to know where the figures came from.” Id. Ultimately, “[bjecause the density cap was arbitrarily adopted, [the appellate court] reverse[d].” Id.
In dicta, the Innkeepers court also noted out “that usually zoning laws provide for variances in certain cases, e.g, in cases of unique hardship, in accordance with some governing standard or rule.” Id. (citation omitted). In a case where there is no “possibility of a variance .... a ‘unique hardship making a zoning ordinance arbitrary, oppressive, or confiscatory as to a particular property, renders it void and unconstitutional in its application to that property.’ ” Id. (citation omitted). How *721 ever, Innkeepers is distinguishable from the case before us.
Here, there is no evidence that the Ordinances were arbitrarily adopted. To the contrary, the enactment of the Ordinances for their stated purposes of preventing signage that could endanger public safety, or damage or impair the County’s aesthetic qualities, tourism, or the general welfare of its public, are all legitimate governmental concerns supporting their validity under the County’s broad home rule and police powers. See City of Sunrise, 421 So.2d at 1085; see also Taxpayers for Vincent, 466 U.S. at 805, 104 S.Ct. 2118; Metromedia, Inc., 458 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800; Lamar Adver., 980 F.Supp. at 1459; City of Lake Wales, 414 So.2d at 1032; Moorman, 664 So.2d at 933.
Moreover, nothing was presented by Malibu to demonstrate that the Ordinances, as applied to the Hotel, caused a “unique hardship.” Malibu’s property has been, and can continue to operate, as a hotel. The only arguable limitation to Malibu’s business, is that it can no longer place outdoor advertising signage on the Hotel. Under Innkeepers, this hardly constitutes a “unique hardship,” making the application of the Ordinances to the Hotel “arbitrary, oppressive, or confiscatory.” See Innkeepers, 460 So.2d at 380. Furthermore, “Florida courts have held that a legal hardship will be found to exist only in those cases where the property is virtually unusable or incapable of yielding a reasonable return when used pursuant to the applicable zoning regulations.” Maturo v. City of Coral Gables, 619 So.2d 455, 456 (Fla. 3d DCA 1993). We also note that in Innkeepers, 460 So.2d at 380, the appellate court analyzed the lack of possibility for a variance in tandem with the “unique hardship” faced by the owner in that case which would essentially render the density restriction “arbitrary, oppressive, or confiscatory,” and did not hold that the mere absence of a variance provision automatically makes an ordinance unconstitutional. Accordingly, we hold that the Ordinances are not unconstitutional.
In denying and dismissing the County’s count for injunctive relief, the trial court specifically found that the:
County cannot demonstrate a likelihood of success on the merits given the fact that it is likely that the County does not have standing pursuant to section 479.105(1)[, Florida Statutes].[3] Moreover, it is also likely the case that this [c]ourt does not have jurisdiction in the first instance because it appears that the County is not a qualified party seeking agency enforcement under section 120.69[, Florida Statutes]. Lastly, under Innkeepers, sections 33-121.10 and 33-121.12 of the County [C]ode may in fact be unconstitutional.
Denying injunctive relief on these bases was error. While the County makes reference in its amended complaint to the fact that the advertising signage at the Hotel has been the subject of litigation between Malibu and the State of Florida Department of Transportation, it does so only to assert, in its general allegations, that the final order of that litigation “is binding on *722 [Malibu] and [Malibu] is collaterally es-topped to deny the contents of that order.” The three counts of the amended complaint, however, all seek relief pursuant to, and in connection with various provisions of Chapter 33 of the Code. Likewise, because the County is merely seeking enforcement of its own Ordinances, and is not seeking “Enforcement of [an] agency action,” there is no mandate that it comply with the “substantially interested person” requirements of section 120.69.[4]
Lastly, we address the trial court’s finding that the County failed to demonstrate that its harm would outweigh that of Malibu if the advertising signage was not removed. In order for an injunction to issue, four prongs must be satisfied:
(1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) a threatened injury to the petitioner that outweighs any possible harm to the respondent; and (4) that the granting of the injunction will not disserve the public interest.
Polk Cnty. v. Mitchell, 931 So.2d 922, 926 (Fla. 2d DCA 2006). It is undisputed that Malibu has placed the advertising signage on the Hotel without a permit. As such, and because we hold the Ordinances are valid, the County is substantially likely to succeed on the merits in seeking to enjoin Malibu. See id. We find that the issue of “relative harm” addressed by the trial court was also not a proper basis for denying the County injunctive relief. The County has the power to seek injunctive relief as a means of enforcing compliance with the Ordinances, and “an injunction merely requiring compliance with binding laws cannot be said to unduly harm [Malibu] or to be a disservice to the public.” Id.
Accordingly, we reverse the trial court’s dismissal, with prejudice, of the County’s amended complaint and its determination that the Ordinances are unconstitutional. We also reverse the denial of the County’s motion for preliminary injunctive relief and remand for entry of a preliminary injunction in favor of the County.
Reversed and remanded.

. The County's Code of Ordinances defines an "outdoor advertising sign" as
[A]ny sign which is used for any purpose other than that of advertising to the public the legal or exact firm name or type of business conducted on the premises, or of products or merchandise sold on the premises; or which is designed and displayed to offer for sale or rent the premises on which displayed, or the subdivision of such prem *718 ises, or present or future construction or development of such premises, or advertising special events....
Miami-Dade County, Fla., Code of Ordinances, Ch. 33, § 33-121.10(h).

. Section 33-121.15 of the Code, provides that "[n]o variances shall be granted through provisions of applicable regulation which will in any way conflict with or vary the provisions of this division.” Miami-Dade County, Fla., Code of Ordinances, Ch. 33, § 33-121-15.

. Section 479.105(1) provides:
Any sign which is located adjacent to the right-of-way of any highway on the State Highway System outside an incorporated area or adjacent to the right-of-way on any portion of the interstate or federal-aid primary highway system, which sign was erected, operated, or maintained without the permit required by s. 479.07(1) having been issued by the department, is declared to be a public nuisance and a private nuisance and shall be removed as provided in this section.
§ 479.105(1), Fla. Sta. (2008).

. Section 120.69 provides: Enforcement of agency action.—
[[Image here]]
(b) A petition for enforcement of any agency action may be filed by any substantially interested person who is a resident of the state. However, no such action may be commenced:
1. Prior to 60 days after the petitioner has given notice of the violation of the agency action to the head of the agency concerned, the Attorney General, and any alleged violator of the agency action.
§ 120.69(b)(1), Fla. Stat. (2008).