VILLANTI, Judge.
Manatee County seeks review of the order denying its motion for a temporary injunction to require Defendants 1187 Upper James of Florida, LLC, Teresa Pulaski, Wesley Rose, and the Bearded Clam Waterfront Restaurant and Tiki Bar, Inc. (collectively “the Restaurant”), to comply with the provisions of Manatee County ordinance PDMU 98-03(P)(R) while the parties litigate the enforceability of that ordinance. We have jurisdiction, see Fla. R.App. P. 9.130(a)(3)(B), and we reverse and remand for entry of the temporary injunction.
The property owned by 1187 Upper James of Florida, LLC, is a hotel, restaurant, and marina near the Manatee/Sarasota county line. The marina sits on a series of deep water canals with Gulf access, and single family residences line both sides of the canals leading from the hotel and marina to the Gulf.
Sometime between 1997 and 1998, the prior owners of the property made extensive renovations to the hotel and marina without obtaining permits from the County. These renovations included converting the existing dockmaster’s quarters on the marina into a tiki bar and arranging to have amplified music played on a small stage for entertainment. Manatee County code enforcement soon became aware of the renovations, and it cited the prior owners for various violations, including not obtaining permits for the construction. At that point, the prior owners applied for after-the-fact permits for the renovations, *1120 including the construction of the tiki bar and stage.
When considering the after-the-fact permit applications, the County attempted to work with the prior owners to allow the use of the tiki bar and stage in a manner that would be compatible with the surrounding residential neighborhood. Ultimately, the prior owners and the County agreed to certain restrictions on the use of the property as a condition of issuing the necessary permits. One of these restrictions limited outdoor entertainment to no-namplified live music between the hours of noon and 7 p.m. In addition, the sound level was limited to 50 decibels at the property line. There is some indication in the record that the County would not have approved construction of the tiki bar and stage had permits been applied for before the work was done. However, after the prior owners agreed to the conditions, including the entertainment restriction, the County issued the after-the-fact permits. All of the restrictions, including the entertainment restriction, were subsequently codified in Manatee County ordinance PDMU 98-03(Z)(P), which applies solely to the property at issue.
Sometime in 2010, Upper James purchased the property, and the Restaurant leased a portion to operate as a restaurant and bar. There is no dispute that Upper James purchased the property under a deed that specifically stated that it was subject to all laws, regulations, and ordinances applicable to the property. There is also no dispute that the Restaurant’s lease required it to comply with all applicable laws, regulations, and ordinances.
Shortly after the Restaurant opened, the County began receiving complaints that the Restaurant was violating the entertainment restrictions of PDMU 98-03(Z)(P). In late April 2011, the County filed a motion for temporary injunction seeking to compel compliance with PDMU 98-03(Z)(P). Shortly thereafter, the Restaurant entered into a consent injunction and agreed to comply with the entertainment restrictions in PDMU 98-03(Z)(P). It also applied to the County to have PDMU 98-03(Z)(P) amended to, among other things, eliminate the entertainment restrictions. While the County declined to change the entertainment restrictions, it did make other requested changes to the ordinance that are not pertinent to this appeal but which resulted in the enactment of a revised ordinance designated PDMU 98-03(P)(R). This change in nomenclature did not affect the original entertainment restrictions agreed to by the prior owners, which remain in effect. After its request to eliminate the entertainment restrictions was denied, the Restaurant initiated an administrative proceeding pursuant to section 70.51, Florida Statutes (2010), directly challenging the enforceability of PDMU 98-03(P)(R). In addition, it filed a motion to dissolve the consent injunction on the basis of coercion, which the trial court granted.
Once the consent injunction was dissolved, the Restaurant resumed providing outdoor entertainment that was in direct violation of the entertainment restrictions in PDMU 98-03(P)(R). In response to numerous citizen complaints, the County filed an amended motion seeking a temporary injunction to require the Restaurant to comply with PDMU 98-03(P)(R). After a short evidentiary hearing, the trial court denied the County’s motion for temporary injunction, finding that the entertainment restrictions in PDMU 98-03(P)(R) were unconstitutional. This ruling has, in effect, allowed the Restaurant to continue to violate PDMU 98-03(P)(R) while the underlying administrative proceeding challenging its enforceability continues. The County now seeks review of this ruling.
*1121 The primary purpose of a temporary injunction is to preserve the status quo while the merits of the underlying dispute are litigated. See, e.g., Smith v. Hous. Auth. of Daytona Beach, 148 Fla. 195, 8 So.2d 880, 881 (1941) (“The obvious purpose of a temporary injunction is the maintenance of the subject matter in status quo pending the determination of the cause.... ”); Belair v. City of Treasure Island, 611 So.2d 1285, 1289 (Fla. 2d DCA 1992) (same). To obtain a temporary injunction, the moving party must establish “(1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (8) a threatened injury to the petitioner that outweighs any possible harm to the respondent; and (4) that the granting of the injunction will not dis-serve the public interest.” Polk Cnty. v. Mitchell, 931 So.2d 922, 926 (Fla. 2d DCA 2006). In general, “[w]here a government seeks an injunction in order to enforce its police power, the first element is established; that is, ‘any alternative legal remedy is ignored and irreparable harm is presumed.’ ” Id. (quoting Metro. Dade Cnty. v. O’Brien, 660 So.2d 364, 365 (Fla. 3d DCA 1995)); see also P.M. Realty & Invs., Inc. v. City of Tampa, 779 So.2d 404, 406 (Fla. 2d DCA 2000). Essentially, the “irreparable harm” is the government’s inability to enforce a duly enacted ordinance. In addition, “an injunction merely requiring compliance with binding laws cannot be said to unduly harm [a business owner] or to be a disservice to the public.” Mitchell, 931 So.2d at 926. Thus, the only truly disputed issue at the temporary injunction hearing was whether the County had a substantial likelihood of success on the merits.
In considering this prong, this court has held that “where one opens a business aware of the violations to the ordinances and continues to operate that business in violation, the government has a clear legal right to relief.” P.M. Realty & Invs., Inc., 779 So.2d at 406; see also Ware v. Polk Cnty., 918 So.2d 977, 980 (Fla. 2d DCA 2005). Here, despite knowing of the entertainment restrictions in PDMU 98-03(Z)(P), despite the prior entry of a consent injunction, despite the denial of its application to remove the restrictions, and despite the pending administrative proceeding, the Restaurant is providing outdoor entertainment until 10:30 p.m. in clear defiance of the entertainment restrictions in PDMU 98-03(P)(R). The Restaurant’s continuing violation of a known ordinance gives the County a clear legal right to the issuance of the injunction.[1]
In this appeal, the Restaurant argues that the trial court properly denied the injunction because the entertainment restrictions in PDMU 98-03(P)(R) are an unconstitutional infringement on its First Amendment rights. It points to case law that holds that playing amplified music is protected under the First Amendment’s free speech clause, see, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); State v. Catalano, 60 So.3d 1139, 1144 (Fla. 2d DCA 2011); Daley v. City of Sarasota, 752 So.2d 124, 125 (Fla. 2d DCA 2000), and it argues that the entertainment restrictions in PDMU 98-03(P)(R) go beyond reasonable time, place, and manner restrictions.
In response, the County denies that PDMU98-03(P)(R) is unconstitutional. However it also argues that, to the extent *1122 that PDMU 98-03(P)(R) might be found to infringe on First Amendment rights, the Restaurant is estopped from challenging the enforceability of the entertainment restrictions in PDMU 98-03(P)(R) because the prior owners specifically agreed to them in exchange for permits they could not otherwise have obtained. The County points out that individuals can waive their constitutional rights, so long as it is done so knowingly and voluntarily. Cf. Chames v. DeMayo, 972 So.2d 850, 858-59 (Fla.2007) (allowing homeowners to waive their constitutional rights to homestead exemptions in certain circumstances as long as it is done knowingly and voluntarily); In re Shambow’s Estate, 153 Fla. 762, 15 So.2d 837, 837 (1943) (“It is fundamental that constitutional rights which are personal may be waived.”); Hartwell v. Blasingame, 564 So.2d 543, 545 (Fla. 2d DCA 1990) (allowing homeowners to waive their constitutional right to homestead exemptions). And the Restaurant, as a subsequent lessee, is bound by the prior owners’ waiver of those rights in exchange for the after-the-fact permits. Cf. Palm Beach Polo, Inc. v. Vill. of Wellington, 918 So.2d 988, 995 (Fla. 4th DCA 2006) (holding that subsequent property owners were bound by prior owner’s agreement to restrict building density and preserve certain portions of land as a condition of the original zoning approval). In addition, the County argues that the owners of the Restaurant must be charged with constructive knowledge of the entertainment restrictions because PDMU 98-03(Z)(P) was duly enacted and recorded in the public records of the County prior to the Restaurant signing its lease.
We do not take lightly the Restaurant’s constitutional challenges to PDMU 98-03(P)(R). However, “[o]ne attacking the validity of an ordinance has the burden of establishing its invalidity when such ordinance appears on its face to have been regularly enacted.” City of Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368, 377 (1940); see also Sandstrom v. City of Fort Lauderdale, 133 So.2d 755, 758 (Fla. 2d DCA 1961); Miami-Dade Cnty. ex rel Walthour v. Malibu Lodging Invs., LLC, 64 So.3d 716, 719 (Fla. 3d DCA 2011). Here, the Restaurant offered no evidence that PDMU 98-03(P)(R) was not “regularly enacted,” and the County has established that the Restaurant is violating the entertainment restrictions in that ordinance. While the Restaurant has raised multiple factual questions concerning the enforceability of PDMU 98-03(P)(R), those questions of fact — including what circumstances led to the prior owners agreeing to the restrictions in the ordinance, whether the prior owners’ waiver of their alleged First Amendment rights was knowing and voluntary, whether other properties in Manatee County have similar entertainment restrictions, and whether the Restaurant knew or should have known of the provisions of PDMU 98-03(Z)(P) when it signed the lease — were not fully fleshed out at the hearing on the temporary injunction. Had the parties actually litigated these issues at the hearing, our result might differ because competent, substantial evidence might then exist to support the trial court’s decision. However, on this record, the parties left these factual issues for another day, and this militates in favor of issuing the temporary injunction so as to preserve the status quo until these factual issues are resolved.
While it is not the function of the courts to determine public policy, cf. Univ. of Miami v. Echarte, 618 So.2d 189, 196 (Fla.1993) (noting that it is the legislature that “has the final word on declarations on public policy”), courts generally will not condone acts that constitute a blatant disregard for duly enacted statutes or ordi *1123 nances or that allow citizens to circumvent their own agreements with governmental entities. As the County pointed out at oral argument, the trial court’s ruling in this case allows a permit applicant to agree to conditions to induce the County to issue the necessary permits, get the necessary permits, make the desired improvements, and then simply disregard the undesirable conditions while challenging their enforceability. This renders the permitting process illusory. Conversely, issuing the temporary injunction maintains the integrity of the permitting process and gives both parties their day in court.
By refusing to grant the County’s request for a temporary injunction, the trial court has allowed the Restaurant to violate a duly enacted, presumptively valid County ordinance during the time that its constitutionality and enforceability are being litigated. This constitutes an abuse of discretion. Given the unusual background facts and the multiple factual questions that exist in this case, the trial court should have granted the injunction to maintain the status quo between the parties while they litigate the constitutionality of PDMU 98-03(P)(R) in light of the prior owners’ alleged agreements. Accordingly, we reverse and remand for entry of the temporary injunction.
Reversed and remanded with instructions.
LaROSE and KHOUZAM, JJ., Concur.

. We note that the prior entry of the consent injunction, which was subsequently dissolved based on allegations that the County had coerced the Restaurant into signing it, does not affect our analysis except to the extent that it establishes that the Restaurant was aware of the entertainment restrictions in PDMU 98-03(Z)(P).